UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DINO N. THEODORE<br>and ACCESS WITH SUCCESS, INC.,<br>        Plaintiffs<br><br>v.<br><br>ENTERPRISE RENT-A-CAR<br>COMPANY OF BOSTON, LLC,<br>        Defendant | )<br>)<br>)  CASE NO.: 1:09-cv-<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

This is an action seeking injunctive, declaratory and equitable relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. The plaintiffs, Dino N. Theodore and Access with Success, Inc. ("AWS") bring this cause against Enterprise-Rent-A-Car Company of Boston, LLC ("Enterprise") and allege as follows:

## PARTIES

1.  The plaintiff, Dino N. Theodore, age 49, is paralyzed from the chest down and requires the use of a wheelchair for ambulation. He suffered an accidental gunshot wound to the T7 vertebrae in 1981.

2.  Mr. Theodore resides with his wife, son, and daughter at 1305 Methuen Street, Dracut, Massachusetts. He is a practicing attorney employed by the Department of Industrial Accidents in Massachusetts. He has been admitted to practice law in Massachusetts since 1993.

3.  Mr. Theodore is a qualified individual with disabilities within the meaning of all applicable statutes, including the ADA, and is disabled within the meaning of the ADA in that he is substantially limited in performing one or more major life activities, including

but not limited to walking and standing. Mr. Theodore always uses a wheelchair for mobility purposes. He is able to drive a car equipped with hand controls.

4.      The plaintiff, AWS, is a non-profit corporation organized and existing under the laws of the Commonwealth of Massachusetts. Its members are able-bodied individuals and qualified individuals with disabilities as defined by the ADA. Scott M. Frotton, age 46, is a founding member of AWS. Mr. Frotton has T7 paraplegia secondary to a spinal cord injury sustained in a construction site accident in 1998. Scott Frotton's wife, Tammy Frotton, is also a founding member of AWS. She is not a disabled person. Mr. Frank Salafia, age 72, is a member of AWS. He is hearing impaired and has a loss of vision in one eye. G. David Iverson is a member of AWS. He is paraplegic due to a gunshot wound he sustained in 1987. He always uses a wheelchair for ambulation. Michelle A. Downer, age 63, is a member of AWS. She sustained ruptured lumbar discs in a car accident many years ago and the condition of her lumbar spine has deteriorated to the point where she has not been able to walk for many years. She always uses a wheelchair for ambulation. Raymond J. Aziz, age 67, is a member of AWS. Mr. Aziz wears braces on both ankles and frequently walks with a cane. His condition is secondary to adult onset of diabetes. Robert Brearley, age 55, is a member of AWS. He is paraplegic due to an accident in 1980. He cannot walk and always uses a wheelchair for ambulation.

5.      The individually named plaintiff, Dino N. Theodore, is also a member and a director of AWS. There are other members of AWS. All of the above-named members of AWS, except for Tammy Frotton, are qualified individuals with disabilities within the meaning of the ADA and all other applicable federal and state statutes.

6. AWS is a civil rights group organized for charitable and educational purposes by individuals with disabilities to advocate for the integration into society of disabled persons and equal access to all services, activities, programs, resources and facilities available to non-disabled persons. Its members are predominantly, but not exclusively, individuals with various physical disabilities impairing mobility, vision and hearing. One of the primary purposes of AWS is to assure that private places of public accommodation are accessible to, and usable by persons with disabilities.

7. Title III of the ADA permits private individuals to bring lawsuits in which they can obtain court orders to stop discrimination on the basis of disability by places of public accommodation.

8. AWS and its members have suffered direct and indirect injury as a result of the defendant's actions or inactions as described herein. AWS also has been discriminated against because of its association with Dino Theodore and his claims. The defendant's failure to comply with the ADA adversely affects the organizational purpose of AWS.

9. The defendant, Enterprise, is a limited liability company organized in Delaware on July 31, 2009. Its application to register to do business in Massachusetts is pending with the Secretary of the Commonwealth.

10. The business address of Enterprise's principal office in Massachusetts is 3A Enterprise Road, Billerica, MA 01821. The name and address of Enterprise's Resident Agent for service of process in Massachusetts is C T Corporation System, 155 Federal Street, Suite 700, Boston, MA  02110.

11.   The general character of Enterprise's business is vehicle rental, leasing, and sales.

12.   Enterprise operates 94 vehicle rental locations in Massachusetts, including two locations visited by the plaintiff, Dino Theodore at 31 River Street, Haverhill, MA 01832 and at 660 South Union Street, Lawrence, MA 01843.  Enterprise's web site states that it is the largest rental car company in North America.   http://aboutus.enterprise.com/

13.   By January 26, 1992, public accommodations, such as Enterprise's rental locations, were required to conform to 28 C.F.R. Part 24, "Americans with Disabilities Act Accessibility Guidelines," also known as the "ADAAGs."

14.   Enterprise's rental locations are places of public accommodation subject to the requirements of the Title III of the ADA and the ADAAGs.

15.   The defendant owns and operates rental establishments which are public accommodations as defined in Title III of the ADA, 42 U.S.C. § 12181(7)(E).

## SYNOPSIS OF A CAUSE OF ACTION UNDER THE ADA

16.   Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals. In studying the need for such legislation, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

17.   Congress found that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices." 42 U.S.C. § 12101(a)(5).

4

18.    After thoroughly investigating the problem, Congress concluded that there was a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals and to integrate them "into the economic and social mainstream of American life." S. Rep. No. 101-116, p. 20 (1989); H. R. Rep. No. 101-485, pt. 2, p. 50 (1990).

19.    The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

20.    In order to make a prima facie case under Title III of the ADA, a plaintiff must prove that (1) he has a disability, (2) defendant's facility is a place of public accommodation, (3) and he was denied full and equal treatment because of his disability.

21.    The ADA's public accommodations provisions also permit an individual to allege discrimination based on a reasonable belief that discrimination is about to occur.

22.    A plaintiff with a disability need not engage in the "futile gesture" of attempting to gain access to each and every feature of a facility or place of public accommodation where access barriers are known to exist and where the owner or operator does not intend to comply with the provisions of the ADA. 42 U.S.C. § 12188(a)(1).

23.    This case arises out of the defendant's unlawful practice of denying meaningful and equal access to the facilities, goods and services offered at Enterprise's rental locations in Massachusetts to persons with disabilities, such as the plaintiff, Dino N. Theodore.

24.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated federal regulations to implement the requirements of the ADA. The regulations are codified at 28 C.F.R. Part 24. The regulations are known as the "ADAAG's" or the "Americans with Disabilities Act Accessibility Guidelines."

25.     Public accommodations, such as Enterprise's rental locations, were required to conform to the ADAAG by January 26, 1992. 42 U.S.C. §12181, et seq., and 28 C.F.R. § 36.508(a).

26.     Enterprise's rental locations must be, but is not, in compliance with the ADA and ADAAG.

27.     The services and accommodations offered by Enterprise must be, but are not offered on a full and equal basis to able-bodied and disabled persons alike.

## JURISDICTION AND VENUE

28.     The Court has primary jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1343 in that this action arises under the laws of the United States and the defendant is subject to personal jurisdiction.

29.     Venue is proper in this Court under 28 U.S.C. § 1391, the claim having arisen in the District of Massachusetts.

## COUNT I - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

30.     On or about December 2008, the plaintiff, Dino Theodore, rented a vehicle from Enterprise. He patronized the Union Street, Lawrence rental location because it is closest to his workplace on Winthrop Avenue in Lawrence.

31. Enterprise's web site states, "Enterprise is committed to providing a range of mobility devices for our customers with disabilities. Hand controls, spinner knobs and pedal extenders are available at no additional charge."
http://www.enterprise.com/car_rental/mobilityDevices.do

32. Enterprise's web site also states, "We typically require two business days notice for mobility device equipped vehicles. However, at certain major airport locations, mobility device equipped vehicles may be available with as little as 24 hour notice. Please note that our ability to provide mobility device equipped vehicles may vary based on the availability of mechanics who are qualified to install the devices."
http://www.enterprise.com/car_rental/mobilityDevices.do

33. Despite having made his reservation 48 hours in advance, Enterprise did not provide Mr. Theodore with a vehicle equipped with hand-controls.

34. Mr. Theodore had to install his own hand controls. After trying this with great difficulty on no fewer than six vehicles, he was finally able to install his hand controls in a PT Cruiser.

35. Mr. Theodore also had difficulty entering the building to complete paperwork due to the lack of an accessible route.

36. Once inside, he observed that the counters were too high to be accessed by a person in a wheelchair and the restrooms were not compliant with accessibility requirements of the ADA.

37. On September 8, 2009, Mr. Theodore went back to the South Union Street location to rent a car because his own car was being repaired in an auto body shop.

38. Despite having made his reservation five days in advance, Enterprise did not provide Mr. Theodore with a vehicle equipped with hand-controls. Again, he had to install his own hand controls on an Enterprise vehicle after an arduous process of trial and error with five or six different rental vehicles.

39. On September 8, 2009, the clerk at Enterprise told Mr. Theodore that vehicles equipped with hand controls at Enterprise were "few and far between."

40. In regard to Enterprise's signature promise, "We'll pick you up," the vehicle that came to pick up Mr. Theodore on September 8, 2009, was a sub-compact that he was only able to get himself and his wheelchair into and out of with great difficulty. It was difficult to store his wheelchair in the sub-compact during the ride.

41. On September 16, 2009, Mr. Theodore's car was being repaired at Woodworth Motors in Andover, MA. The service department arranged for a vehicle to be delivered to Mr. Theodore at Woodworth Motors. They specifically requested a vehicle with hand controls.

42. Again, Enterprise did not provide Mr. Theodore with a vehicle equipped with hand-controls. Again, he had to install his own hand controls on an Enterprise vehicle after an arduous process.

43. On September 8, Mr. Theodore observed that the South Union Street location lacked an accessible route into the building and the transactional counter, in addition to lacking a van accessible disabled parking space, and lacking an accessible route from the parking to and into the facility.

44. In an effort to avoid the problems he encountered at the South Union Street location, Mr. Theodore stopped at the 31 River Street, Haverhill location on October 2, 2009.

45. At the Haverhill location, he observed an entrance ramp in disrepair. The only entry door was too narrow to accommodate his wheelchair. Attempting to enter appeared to be a futile gesture, so he did not go inside.

46. Mr. Theodore wishes to be able to patronize Enterprise rental locations in the future and utilize the car rental services offered by Enterprise on a full and equal basis with non-disabled persons. He reasonably expects that he will return to Enterprise as a patron, but he continues to be denied meaningful access to the facility due to the architectural barriers to wheelchair access there.

47. On information and belief, the number and kind of architectural barriers to wheelchair access differs from one Enterprise location to another throughout Massachusetts, but the defendant's policy of discriminating against persons with disabilities by failing to provide vehicles with hand controls applies to all 94 Enterprise rental locations in Massachusetts. Likewise, the defendant's failure to provide wheelchair accessible vehicles in regard to its signature promise, "We'll pick you up," applies to all 94 Enterprise rental locations in Massachusetts.

48. The defendant has discriminated against the plaintiffs and continues to discriminate against them by denying persons with disabilities access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of Enterprise as prohibited by 42 U.S.C. § 12182(b)(2)(A)(iv) and by failing to make alterations in such a manner that, to the maximum extent feasible, the

altered portions of the facility are readily accessible as required by 42 U.S.C. § 12183(a)(2).

49.  With respect to altered facilities under the ADA, discrimination constitutes "a failure to make alterations in such manner that, to maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." 42 U.S.C. § 12183(a)(2).

50.  On information and belief, Enterprise's rental locations in Massachusetts have undergone renovations since January 26, 1992 such that including accessible features was mandatory, but the defendant did not include accessibility features in the renovations.

51.  The defendant is required to remove architectural barriers to wheelchair access to the extent that such modifications would be "readily achievable."

52.  42 U.S.C. § 12182(2)(A)(iv) provides that "discrimination" under the ADA includes "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable."

53.  Under 42 USC § 12181(9) the term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense."

54.  The "readily achievable" requirement is based on the size and resources of the entity. Larger places of public accommodation with more resources are expected to take a more active role in removing barriers than small places of public accommodation.

55.  Barrier removal is an ongoing obligation. A place of public accommodation is expected to remove barriers as resources become available.

56. Despite having available resources, the defendant has not engaged in readily achievable barrier removal at its rental locations on an ongoing basis since the enactment of the ADA in 1992.

57. The plaintiffs have suffered an injury in fact as a result of the defendant's non-compliance with the ADA. Mr. Theodore's expectation to patronize Enterprise in the future creates a real and immediate threat of future injury.

58. The defendant has failed to adopt an adequate nondiscrimination policy or has failed to update existing policies.

59. The defendant has failed to train its staff adequately about ADA requirements.

60. The defendant has failed to modify its policies to accommodate disabled persons.

61. The defendant has failed to take those steps that may be necessary to ensure that individuals with disabilities are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of reasonable accommodations, auxiliary aids, and services.

62. The defendant has denied persons with disabilities, such as the plaintiffs, an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that are equal to that afforded to other non-disabled patrons of Enterprise.

63. On information and belief, the plaintiffs allege that there are other ADAAG violations present within Enterprise's rental locations that will be more fully alleged upon discovery and further inspection.

64. The actions and initiatives that the defendant has failed to undertake in order to make its facilities and services accessible to persons with disabilities are actions and

initiatives that would be readily achievable, required by law, and would greatly assist persons with mobility disabilities at minimal expense to the defendant.

65. The defendant's conduct constitutes ongoing and continuous violations of the ADA and, unless restrained from doing so, the defendant will continue to violate the ADA. Said conduct, unless enjoined, will continue to inflict injuries for which the plaintiffs have no adequate remedy at law.

66. The injunctive relief requested below will redress the plaintiffs' injury.

67. The plaintiffs request that the Court will order the defendant to alter Enterprise's rental locations by bringing all 94 locations into full compliance with the ADAAGs, including the parking areas, general public function areas, public restrooms, transactional counters, and all other amenities installed for the use of the general public, including walkways, ramps, and all public entrances as well as the stairs and corridors, to make Enterprise's rental locations readily accessible to and useable by individuals with disabilities to the extent required by the Americans with Disabilities Act, C.F.R. Part 36 and award the plaintiffs appropriate attorneys' fees and costs of this suit as provided by 42 U.S.C. § 12205.

Respectfully submitted,
The Plaintiffs, DINO THEODORE, et al.,

By their Attorneys,

_[signature]_
Nicholas S. Guerrera, BBO#551475
Shaheen Guerrera & O'Leary, LLC
Jefferson Office Park
820A Turnpike Street
North Andover, MA 01845
(978) 689-0800
nguerrera@sgolawoffice.com

Dated: October 21, 2009